
Minute Order Form (7/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 2178 | **DATE** | 3/20/2001 |
| **CASE TITLE** | ZAWIKOWSKI, ET AL vs. BENEFICIAL NATIONAL BANK, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order awarding fees and costs by class counsel in general, with payment stayed until further order of court. Request for fees and costs by objectors' counsel are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 22 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | CM | 454 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
MAR 2 2 2001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOEL E. ZAWIKOWSKI, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BENEFICIAL NATIONAL BANK, et al., <br><br> Defendants. | No. 98 C 2178 <br> Judge James B. Zagel |
| DECARLO TURNER, <br><br> Plaintiff, <br><br> v. <br><br> BENEFICIAL NATIONAL BANK, et al., <br><br> Defendants. | No. 98 C 2550 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

I granted final approval to the class action settlement in these cases, and now objector and class counsel request fees and expenses. I assume familiarity with the history of these cases and my previous rulings. See *Zawikowski v. Beneficial National Bank*, 2000 WL 1051879 * 1 (N.D. Ill. 2000).

I deny all the petitions for fees and expenses for counsel for the objectors. There are a few reasons why I do this.

The objectors are still challenging the settlement on appeal and it is difficult to perceive why a lawyer should be awarded fees for a settlement that he or she is trying their best to see is

454

never paid to the class members. If the lawyers succeed in overturning the settlement and then, by trial or settlement, secure a different and better benefit for the class members, then they would be entitled to fees for that work. In the meantime, however, the objectors did not confer any benefit to the class worthy of reward.

One objector's counsel argues that fees are due because his lawsuit in Texas precipitated, at least to some extent, the settlement in this case. This is a tough proposition to argue. There were many, many lawsuits filed against the defendants here. The Texas case did not even involve one of the defendants in this case. See *H&R Block, Inc. v. Haese*, 992 S.W.2d 437 (Tex. 1999). The Texas suit against Block was no more threatening to Block than a suit in Maryland.[1] *Green v. H&R Block, Inc.*, 355 Md. 488, 735 A.2d 1039 (Md. 1999). In approving the settlement, I noted that Block had beaten back these lawsuits for many years. There was nothing extraordinary about the Texas case that would have precipitated the settlement. It is quite likely that the persistent filing of suits in many courts did serve as a major motivation to Block to reach a settlement, but that was the result of the cumulative work of many lawyers and the Texas counsel deserve no special credit. See *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999). Indeed, I am not satisfied that it was ever the threat of liability that motivated the settlement. The continuing legal costs and the public relations damage from the sheer number of lawsuits were just as likely to have forced the

---

[1] There was also a suit in Pennsylvania, but that class was not included in this settlement. At the time of the settlement, the Pennsylvania case looked better for the plaintiff side than it does now. An intermediate reviewing court sustained the viability of the theory of liability. *Basile v. H&R Block, Inc.*, 729 A.2d 574, 582 (Pa. Super. Ct. 1999). The Supreme Court of Pennsylvania reversed that ruling, handing Block a victory for its position. *Basile v. H&R Block, Inc.*, 761 A.2d 1115 (Pa. 1999).

settlement as fear of judgment which had been sought for a decade and never obtained. See *Zawikowski*, 2000 WL 1051879 at * 11.

The strongest part of the claims for fees and expenses arises from the fact that I sustained one objection on an issue of some consequence. I refused to approve a settlement which permitted unclaimed funds to revert to the defendants. *Zawikowski*, 2000 WL 1051879 at * 12.

Ordinarily, the lawyers who file motions in court know a lot more about the case, at least when they file the motions, than does the judge who is to hear the motion. The motion before me touches upon the one area in which the judge knows more than the lawyers. A small constellation of lawyers are requesting fees for the work they did in urging me to reject, in part, a proposed settlement of a class action. Since I did reject one part of the settlement, these lawyers each claim credit for influencing my judgment. Briefing motions like these, in the specific context of this case, is a waste of paper. My rejection of a single provision–the reversion–occurred shortly after a hearing in which a relatively small portion of the time was devoted to the issue of the reversion. I remember why I did not approve the reversion. Counsel seeking fees and expenses on this point might have been better off filing a single page saying "Judge, if I was the one who persuaded you to disapprove the reversion, then you ought to award X dollars to me for my fees and expenses."

Virtually every objector complained about the reversion, including the earliest and principal objectors who had brought the *Carnegie* case in New York and who have not sought

fees here.[2] If anyone deserves credit for the defeat of the reversion, it is counsel who are not asking for fees. But they would not deserve it either.

It is my view, and has been for some while, that reversion provisions need careful scrutiny.[3] In this case, I gave preliminary approval to such a provision because I knew that there would be a full scale hearing on objections, and I set aside three days to listen to evidence and arguments on final approval. My view, reaffirmed after hearing arguments, is that reversion provisions are appropriate in some cases and inappropriate in others. The best way to determine whether they are appropriate is to grant preliminary approval, and then assess the validity of the reverter on the basis of the way the settlement is received by the class. If the claims against the fund are a small fraction of the settlement fund and the reversion is likely to be substantial, then there is a good case for allowing the reversion provision to take effect. This is so because the absence of claims upon the fund suggests that the settlement overvalued the damage to the plaintiff class (assuming the claim and opt-out procedures are simple, easy and fair). To put it another way, the reaction of the class can be said to decide the dispute between class counsel and defendants as to the gravity of the claims. By the same token, where the filed claims leave little to revert, this shows that the settlement was not too rich and indicates that reversion should not, in the interests of fairness, be allowed. I assume the number of claims made under-represents the number of claims that could have been made, and thus is somewhat less than the total amount

---

[2] *Carnegie v. H&R Block, Inc.*, 703 N.Y.S.2d 27 (1st Dept. 2000); see also *Affatato v. Beneficial Corp.*, 1998 WL 472494 *1 (E.D.N.Y. 1998).

[3] Of course, this concern is not unique, and has been the subject of high-profile commentary that predates this litigation. John C. Coffee, Jr., *Claims Made Settlement: An Ethical Critique*, New York Law Journal, July 15, 1993 at 5 col.1.

4

that defendants ought to pay. Therefore, when the reversion is small, I believe it is reasonable to assume that the full value of the settlement is an accurate measure of the relief that should be available to the class, given the risk assessment made by defendant in agreeing to this number in the first place.

Of course when the result is somewhere in the middle -- a reversion that is neither very small or very large, the decision becomes more difficult. But, the fact that the claims data might in the end be less than helpful is no argument against the procedure I used. A judge who is faced with a mid-range result from the claims data is no worse off at final approval than he or she would have been without any data. In this case, the proportion of funds anticipated for reversion convinced me that those funds ought not to go back to defendants, especially in light of the certainty created by a non-reversionary settlement. This reasoning, flawed or not, is what led me to disapprove the reversion provision. It was not the arguments of those counsel who seek fees here.

This leaves the fee petitions of the lawyers who did represent the class and negotiated the settlement. They are all agreed on the total fee ($4.25 million) to which, by virtue of agreement, the defendants do not object. They disagree on the division of the fees citing both claimed agreements about fee sharing and considerations of merit. Their positions fall short of wildly antagonistic. All the disputants agree that each of the lawyers made significant contributions to the resolution of the case and all agree that each merits a substantial portion of the total fee. I do consider that the total fee is fair and reasonable as a percentage of the total recovery, and as recompense for efforts in a case in which a favorable result was neither a foregone conclusion nor

something that could be achieved without substantial effort. I therefore grant the motion to award the total fees that are sought by class counsel, but I stay the obligation to pay it until resolution of the dispute among counsel.

The Court will resolve the dispute by examination of the papers (including records of counsel to be examined *in camera*), by hearing arguments of counsel and by assessing the contribution of counsel in light of my own knowledge of the case. I shall allot one day to hear presentations of counsel.

The motions for an award of fees and costs by class counsel are granted in general, with payment stayed until further court order. The motions for awards of fees and costs by objectors' counsel are denied.

ENTER:

James B. Zagel
United States District Judge

DATE: 3/20/01