IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LYNNE A. CARNEGIE On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>HOUSEHOLD INTERNATIONAL, INC., HOUSEHOLD BANK, f.s.b. successor in interest to BENEFICIAL NATIONAL BANK, HOUSEHOLD TAX MASTERS, INC., formerly known as BENEFICIAL TAX MASTERS, INC., BENEFICIAL FRANCHISE COMPANY, INC., H&R BLOCK INC., H&R BLOCK SERVICES, INC., H&R BLOCK TAX SERVICES, INC., H&R BLOCK EASTERN TAX SERVICES, INC., BLOCK FINANCIAL CORP., and HRB ROYALTY, INC.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No.  98 C 2178 |

### MEMORANDUM OPINION AND ORDER

The long history of this case is largely reflected in various published opinions. Briefly, a prior settlement was remanded by the Seventh Circuit Court of Appeals for further consideration. At that time the case was reassigned to this court. After extensive hearing, I concluded that it was impossible to determine whether the settlement was fair, and that it was appropriate to turn the management of the case over to counsel for the objecting plaintiffs. Soon after that they filed a revised complaint, in which, among other things they substituted the present named plaintiff for the original named

plaintiffs. Defendants then moved to dismiss, and I granted that motion in part. This case is set for trial on the remaining claims. However, counsel for plaintiffs and defendants in this class action have now moved for preliminary approval of a proposed settlement of this case. The motion was filed on May 9, 2005, and sought an expedited hearing. Defendants also seek an injunction pending final approval of the settlement against other litigation currently pending in various courts. While the need for expedited hearing was not clear, although it appears to be related to various other actions pending in various courts around the country, I held a hearing on the motion on May 13, 2005, at which counsel for named plaintiff and the Block defendants argued. I also heard from various objectors, including counsel for actions pending in Ohio, West Virginia, Pennsylvania, Illinois and Texas. For the reasons stated in this opinion, I decline to give preliminary approval to this settlement in its present form. Defendants' motion for an injunction against other suits is denied.

I review a motion for preliminary approval of a class action settlement to determine whether the proposed settlement is within the range of possible approval. The hearing on the motion is not a "fairness hearing"; its purpose is to determine whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305,

314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). "Because there is typically no client with the motivation, knowledge, and resources to protect its own interests, the judge must adopt the role of a skeptical client and critically examine the class certification elements, the proposed settlement terms, and procedures for implementation." *Manual for Complex Litigation, Fourth*, sec. 21.61 at 310.

The proposed settlement contains a number of unusual terms. The case before me concerns Refund Anticipation Loans ("RALs") obtained by taxpayers from one or more defendant at the time the defendant prepares the taxpayer's tax return. The suit concerns practices allegedly engaged in by defendants that fail to inform the RAL recipient of various, allegedly material information in connection with the loan. The proposed settlement would extinguish all claims in connection with these loans. It would also release defendants from any liability, under federal, state, or other law for any other "activity engaged in or any services performed directly or indirectly in connection therewith, including but not limited to tax preparation, electronic filing, document preparation or related services, contractual commitments, collection activities, advertisements or solicitations." Furthermore, the proposed settlement calls for an injunction, effective for a three year period, against

3

*plaintiff and all class members,* enjoining them for three years from commencing or prosecuting any claim or action under any legal theory concerning any business practice set forth in Appendix A to the Settlement Agreement "either directly, representatively, derivatively, or in any other capacity, whether by a complaint, counterclaim, defense, or otherwise, in any local, state, or federal court, or in any agency or authority or forum wherever located" ... "so long as any of the HRB Defendants ... do not knowingly and materially fail to conform to such business practices." The penalty for violation of the injunction is payment of the HRB defendants' costs and attorneys' fees. The injunction against any action by any member of the plaintiff class would be permanent with respect to RAL applications and forms in Appendix B.

In return for giving defendants so broad a release, and agreeing to injunctive relief to enforce defendants' prospective freedom from lawsuits, the proposed settlement on its face calls for the payment of $110,000,000 in cash as well as coupons in the amount of $6.00 each, redeemable for services offered by Block. Out of the $110,000,000, counsel say they will seek a fee and costs of 25 percent of the settlement. They will also seek 25 percent of the value of the coupons, which they say has been estimated by their expert to be approximately $190,000,000. The amount is to be further reduced by the costs of notice and

4

administration, which are not to exceed $13,750,000. Counsel estimate the actual fund that would be available for distribution to the class to be approximately $68,750,000.[1]

The class proposed to be included in a new settlement is much broader than the certified class before this court. The certified class includes persons who received Refund Anticipation Loans from Block or Beneficial from 1987 to approximately 1997 when Block began including arbitration clauses in the loan documents. I previously excluded, in response to Block's motion, persons subject to the arbitration clause, from the federal class. The settlement class, however, would include all persons who had taken out RAL's up until virtually the present time. I am told that the potential class could number 28,000,000 persons.

Counsel are unable to tell me how much any individual class member might receive under this settlement. Under one analysis, it might be $1.50 per RAL taken out by a class member, plus coupons. Under another, it might be $11.00, again plus coupons. The amount depends upon how many class members receive notice and file claims.[2] Regarding notice, the settlement calls for sending

---

[1] In partial response to my stated concerns at the hearing on this motion, counsel say they are investigating additional notice but that the additional cost would reduce this amount.

[2] In a new filing, counsel say the amount may be higher, but as I understand it that would be only if the number of claimants were essentially the same as under the prior settlement. Since the class is so much larger, and there were questions about adequate notice in the prior settlement, that

5

a claim form to the 1,100,000 persons who filed claims under the previously rejected settlement (but many of them may have moved in the intervening years), and all persons whose names and addresses are currently in Block's data base. Counsel would also use the Postal Service forwarding service to attempt to reach all persons who had moved within the last year. Finally, counsel would place one notice, to be run only once, in *Parade* magazine. They have not given me any reason for the choice of magazine or cited any statistics that would support notice there as opposed to any other publication, or the decision to place only one notice. Neither have counsel indicated any knowledge of whether the recent Block data base would be likely to reach members in the certified class. Presumably, more extensive notice through publication or other means would reach more class members.[3] What is troubling is that although class counsel represent a certified class of mainly low income individuals going back as far as 15 years, and ending in 1996, they have done no research and have not even attempted to present the court with information as to what type of notice would be reasonably likely to reach the most individual class members at a cost commensurate with the benefit to be gained by the settlement.

---

does not appear to be a realistic estimate.

[3] In a supplemental filing, counsel say they are exploring the possibility of better notice. At this point, however, nothing concrete has been presented.

Under the only notice provided in the proposed settlement presented to me, counsel are unable to tell me at this time how many people may actually get notice. Thus they are unable to articulate how much the settlement is worth to any individual. There is no basis therefore for me to give preliminary approval to the settlement without a better idea of what a claimant is likely to receive and without assurance that notice will be given that is likely to reach the greatest number of class members.

Counsel rely heavily on the coupons that would be part of the settlement. The settlement would provide one coupon for each RAL, up to four, and counsel say many plaintiffs took out more than one RAL over the years. But the $6 coupons are redeemable only for services. According to a Block's SEC Form 10-Q filing on January, 2005, the average fee charged its clients last year was almost $150.00. The same filing notes that fees the prior year averaged $140.00. It seems likely that the $6 coupon fee would simply be lost in higher fees, and it is at any rate too little to be meaningful.[4] The coupons here appear to be the classic free advertising, which Block is free to provide but which cannot be given value in considering the reasonableness of

---

[4] Counsel say that up to four coupons could be issued to a plaintiff (although a caveat in the agreement indicates that might be only three) and that returned coupons (they would be attached to the mailed notice) would be redistributed. But the coupons are good for only three years and a plaintiff is restricted in the number that can be used in any year as well.

a settlement. *Compare In re Mexico Money Transfer Litigation*, 267 F.3d 743, 748 (7th Cir. 2001). (Notably, in a Texas case in which plaintiffs also sued Block over RAL's, the Federal Trade Commission intervened to object to a proposed settlement in which RAL plaintiffs would get coupons worth $20, plus software.)

There are other aspects of the proposed settlement that are troublesome. Counsel for plaintiffs argue that for three years Block would be required to change its practices to provide more information to potential RAL customers. But the only enforcement mechanism is if plaintiffs' counsel come into court to complain. And objecting counsel say that the information defendants would be required to provide RAL customers is less than provided under the settlement present plaintiffs' counsel successfully argued was insufficient.

Neither have class counsel articulated a justification for including in the settlement millions of people not in the certified class. Their inclusion may reduce substantially the amount of money that would be received by the certified class, to whom counsel and the court owe a fiduciary duty.[5] Their inclusion also would impact various other actions in which the broader class are plaintiffs and in some cases may have a better

---

[5] While this is not necessarily the case, the potential conflict between class members, to whom a fiduciary duty is owed, and members of a broader class emphasizes the necessity for attention to notice to actual class members and analysis of the settlement in terms of the dollar value to each claimant.

8

chance of a more substantial recovery than in this case. The objectors who appeared before the court despite the short notice illustrate the problem. Following the rejection of the earlier settlement, and the filing of a new complaint by new counsel for plaintiffs, defendants moved both to dismiss and for a denial of class certification. Based on applicable Seventh Circuit law, I agreed with defendants that plaintiffs could not pursue their state court claims in this case because of the fact that the laws of many states would differ. Plaintiffs were free to pursue their state court claims, which might well be easier to prove than their federal RICO claim, in their respective state courts. In some cases they have done so. Thus in West Virginia, in *Cummins v. H&R Block, Inc.*, No. 03-C 134 (Circuit Court of Kanawha County), a class of 350,000 RAL purchasers has been certified in which it is alleged that Block has violated West Virginia consumer law. According to counsel, their required proof will be substantially less than under federal law. Damages may also be greater, with a $200 minimum recovery for each plaintiff, and with a potential recovery of several thousand dollars. That case is set for trial this fall. Plaintiffs have taken three dozen depositions, and prevailed on Block attempts to remove the case to federal court (and obtained sanctions against Block), all the way to the U.S. Supreme Court. There is no basis

under this settlement, nor is their likely to be one under any settlement of this case, for enjoining prosecution of that case.

In another action, in Ohio, *Becker v. H&R Block, Inc.*, No. CV 2004-03-1680 (Ohio Court of Common Pleas, Summit County), plaintiffs claim that Block violated Ohio law through various practices connected with their RAL services. Ohio law, according to counsel, provides for disgorgement of profits, and each class member is likely to receive from $75 to $175, again under more generous requirements of proof. Similarly, as with *Cummins*, having won the argument that state law claims had to be brought in separate actions, defendants cannot argue that the case should not go forward. Three other cases, in Pennsylvania, Illinois and Texas, allege that practices not even at issue in the present case violate state laws. Because some of the plaintiffs in those cases obtained RAL's, they would be barred from pursuing those cases under the proposed settlement.[6]

In arguing for preliminary approval of their proposed settlement, counsel for plaintiffs said both that the settlement was more generous than the previously rejected settlement and that even if not, changes since that time argue in favor of this settlement. The prior settlement was for $25,000,000 but that

---

[6] Subsequent to the parties' motion before me, an Illinois judge temporarily enjoined defendants from including the case before him in this settlement. The parties have agreed to withdraw that case from the provisions of the settlement.

did not include attorneys' fees or costs. The class consisted of about 17,000,000 people, not 28,000,000 as in the present proposed settlement. At the time, present counsel successfully argued that the settlement, which was expected to net each plaintiff $15 or $30, and provided for injunctive relief against Block, was inadequate. In making their arguments, and then seeking to substitute the present named plaintiff, counsel presumably took into account the risks that some of their claims could not be asserted by the present plaintiff or in federal court.

I have enumerated some of the problems with the newly proposed settlement. There are numerous additional problems involving language in various attachments, but given the present problems it is clear that without more information and in its present form it cannot be given even preliminary approval. At the very least, counsel for plaintiffs, who should not need reminding that they owe a fiduciary duty to every member of the plaintiff class, need to obtain and present the best possible proposal for giving reasonable and adequate notice to the class, and to provide the court with a reasoned analysis of how many claims are likely to be made so that there is some basis upon which to determine whether the settlement is reasonable. The settlement needs to be modified, as well, to exclude injunctive

relief against unnamed class members[7] and to exclude the state actions that defendants previously invited, as well as actions involving other practices by defendants. If the parties wish to explore further the possibility of settlement with an independent mediator, I will be happy to refer them to a mediator familiar with the law in this Circuit.

**ENTER ORDER:**

*[signature]*

**Elaine E. Bucklo**
United States District Judge

Dated: May 25, 2005

---

[7] Defendants argue that they need to buy peace and that they are constantly facing new actions against them. Whether any injunctive relief against future actions by unnamed class members is appropriate is open to question. A reasonable release plus principles of res judicata would seem to provide sufficient protection against relitigation by class members. What is certainly clear is that the present proposed broad injunctive relief is inappropriate.

12