IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LYNNE A. CARNEGIE, On Behalf of Herself and All Others Similarly Situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 98 C 2178<br>) |
| HOUSEHOLD INTERNATIONAL, INC., HOUSEHOLD BANK, f.s.b., successor in interest to BENEFICIAL NATIONAL BANK, HOUSEHOLD TAX MASTERS, INC., formerly known as BENEFICIAL TAX MASTERS, INC., BENEFICIAL FRANCHISE COMPANY, INC., H&R BLOCK, INC., H&R BLOCK SERVICES, INC., H&R BLOCK TAX SERVICES, INC., H&R BLOCK EASTERN TAX SERVICES, INC., BLOCK FINANCIAL CORP., and HRB ROYALTY, INC., | )<br>)<br>) Judge Elaine E. Bucklo<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

The parties to this case have reached a settlement.[1] This is the third settlement in this case. The first was approved by another judge, but the Seventh Circuit, questioning whether counsel had fulfilled their obligations as attorneys for the class, remanded the case for further consideration. *Reynolds v. Beneficial National Bank*, 288 F.3d 277 (7th Cir. 2002). Following a hearing and extensive briefing, I concluded that counsel had not demonstrated that the settlement was fair and reasonable. I also concluded that class counsel's representation of the class was inadequate. 260 F. Supp.2d 68 (N.D. Ill. 2003). The parties, with new counsel and a new lead

---

[1] The discussion in this opinion assumes reader familiarity with the prior opinions of this court and the Seventh Circuit.

plaintiff, eventually reached a second settlement. I rejected that settlement, declining to give it even preliminary approval. On the eve of trial, counsel reached a third settlement with the help of a mediator. I have given that settlement preliminary approval. Notice has been sent to the certified class. A fairness hearing was held on August 1, 2006. I now approve the settlement.

I am required to give careful scrutiny to any proposed settlement of a class action. *E.g., Mirfasihi v. Fleet Mortgage Corp.*, 450 F.3d 745, 748 (7th Cir. 2006). I must consider the "probability of plaintiff prevailing on its various claims, the expected costs of future litigation, and hints of collusion." *Id.* I must determine the litigation value of the case and assess the settlement against that value. *E.g., id.* at 750.

The settlement before this court is for $39,000,000 in cash, plus interest for six months from May 4, 2006, estimated to be about $850,000. Two million dollars of this amount will be used for notice and administration costs. Additional costs will be paid by defendants or come out of class counsel's fees. Class counsel's fee will also come out of the settlement amount. Counsel seek a fee of $6.25 million, and costs of $1,566,730.92, which, if approved, would leave a fund of approximately $30,034,269 to be distributed to claimants from a class of 1,723,610 people who received a Refund Anticipation Loan from Beneficial National Bank through any H&R Block office between April 8, 1994 through December 31, 1996, with certain exclusions. If all class members submitted valid claim forms, each member would get $15 for each Refund Anticipation Loan or RAL. As of August 3, 2006, the claims administrator had received 309,092 claim forms representing 371,823 RALs. Counsel represent that if no further claims are received, each RAL claim will generate an award of $80.68.

Class members received notice of the proposed settlement pursuant to an extensive notice program designed and implemented by Todd B. Hilsee, of Hilsoft Notifications.[2] Mr. Hilsee was instructed to design a program that would give actual notice in a form easily understood to as many class members as possible. Notice included individual mailings to all known class members, following a multi-source address updating effort. Notice also included advertisements in well-read national consumer magazines targeting class member demographics. In addition, a public service radio announcement was prepared and played on 63 radio stations in 23 states. Notice included a web-site, on which there have been over 100,000 "hits." There has also been newspaper media publicity about the settlement.

Despite the extensive notice given this settlement, only six objections have been received.[3] Four of them have been filed by attorneys previously excluded from further representation of the class in this case following disapproval of the first settlement by the Seventh Circuit and this court. A fifth objection, to giving any leftover money to charity, is moot given the number of claims already filed. The sixth objection is in the name of Roy Carbajal. Mr. Carbajal is not a member of the certified class. His own action was previously rejected by another judge in this district and the Seventh Circuit, which upheld the arbitration clause signed by him when he took out his RAL. *Carbajal v. H&R Block, FSB*, 2003 WL 22159473 (N.D. Ill. 2003), *aff'd*, 372 F.3d 903 (7th Cir. 2004). One of the four remaining objections was filed by

---

[2] Mr. Hilsee has worked with the Federal Judicial Center to improve the quality of class notice. His work has been praised by numerous federal and state judges.

[3] One additional objection was withdrawn.

3

attorney Francine Schwartz, one of the attorneys excluded from further representation of the class in my decision of April 15, 2003. That objection is considered at the end of this opinion.

The other three objections were filed on behalf of Valerie Lee, Alana Hanser and Curtis Williams by Daniel Harris, another attorney excluded from continuing participation in this case.[4] Defendants argue that the objections were filed too late but given an ambiguity in several documents, one of which indicated that timely notice to counsel was sufficient, I will consider them. Ms. Lee argues that the settlement is too low. She bases her objection on the litigation value placed by plaintiff at the preliminary approval hearing on this settlement, in which plaintiff represented that her expert would testify that damages in this case under RICO are $93 million.[5] Ms. Lee says those damages would be trebled, making the amount $279 million, and that plaintiffs would also be entitled to prejudgment interest. However, numerous courts have held that in determining a settlement value, the potential for treble damages should not be taken into account. *E.g., County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1324 (2d Cir. 1990); *In re Western Union Money Transfer Litigation*, 2004 WL 3709932, at 11, n.11 (E.D.N.Y. 2004). In addition, prejudgment interest would not likely be awarded if damages were trebled.

---

[4] The history of Mr. Harris' involvement in this case is discussed in the first Seventh Circuit opinion in this case, my opinion on remand, and Judge Zagel's opinion at 2000 WL 1051879 (N.D. Ill. 2000).

[5] As plaintiffs' counsel point out, Mr. Harris, attorney for Ms. Lee, in attempting to defend the earlier settlement that was thrown out, argued that the RICO claim had only a one to five percent likelihood of success, covering a larger time period, and that "the expected value of the damages for this action is $2.6 million to $13 million."

4

*See, e.g., International Gemmological Institute, Inc. V. Rafaeil*, 2005 WL 3880222, at 6 (S.D.N.Y. 2005); *Louisiana Power & Light v. United Gas Pipe Line*, 642 F. Supp. 781, 811 (E.D. La. 1986). Furthermore, as discussed in this opinion, the likelihood of plaintiffs obtaining a damage award in this amount is less than 50 percent.

Mr. Williams is not a member of the certified class since he did not receive an RAL during the class period. He is therefore without standing to contest the settlement. *E.g., Gould v. Alleco, Inc.*, 883 F.3d 281, 284 (4th Cir. 1989). His argument, that a West Virginia settlement reached recently involving some of the same counsel indicates this settlement must be collusive, is also without merit. Both the West Virginia settlement and this one were negotiated at arms length by Thomas R. Meites, at my suggestion.[6] Mr. Meites has submitted a declaration describing the lengthy negotiations. The settlement was reached after full discovery, a contested motion for class certification that was appealed to the Seventh Circuit, a motion to dismiss that I granted in part, cross motions for summary judgment that I granted and denied in part, and after counsel had prepared drafts of a final pretrial order. I conclude that this settlement is not collusive. Ms. Hanser adds the argument that the settlement releases potential state claims that plaintiff never attempted to litigate. In fact, the amended complaint filed by Ms. Carnegie in 2003 included various state claims. I ruled that most could not be brought on behalf of a nationwide class, based on the Seventh Circuit's decision in *In re Bridgestone/Firestone, Inc.*,

---

[6] The West Virginia case settled state claims from various states that were consolidated for purposes of settlement. I had agreed with defendants that most state claims could not be brought in this case. Thereafter, counsel brought or pursued various state claims in a number of state courts. I rejected the second settlement proposal in part because it would have released those state claims. West Virginia has a statute that had been construed so that Block might be found to be a loan broker, and as an unlicensed loan broker, subject to a fine of $200 for each loan.

288 F.3d 1012 (7th Cir. 2002), because of the need to apply the differing laws of numerous states. Furthermore, any claims that have not been brought that are the subject of the release in this case are surely barred by the statute of limitations, since the release bars only claims during the class period, which ended on December 31, 1996. Counsel has not pointed to any law that would hold otherwise.

Only two claims remain in this case. One is a contract claim and as to that claim, there can be no doubt that the settlement is fair since each contract claim would be worth about $7.00 (the amount in license fees allegedly returned back from Beneficial to H&R Block without disclosure to plaintiffs) and each class member will receive multiples of that amount. The other claim is the RICO claim under 18 U.S.C. sec. 1962(c) and (d). Counsel estimate that the highest damage award for this claim could be $93,000,000, if they prevailed on both the "bait and switch" and "kickback" theories, and the jury (and courts) accepted their damage figures, with further estimates in the medium range of $39,060,000 (if the jury found liability on both theories but did not accept plaintiffs' damage theory) and a low figure of $13,500,000 (prevailing on only the "kickback" theory and accepting their damage figure of the amount. Using these numbers, defendant H&R Block ("Block") estimated it had a 40 percent chance of losing on the legal issues, an equal chance of losing at trial, and the same chance of having to pay the maximum sought by plaintiffs in damages. Block therefore valued the case at $20,000,000, the amount that it is paying as part of the settlement. Plaintiffs also assumed a 40 percent chance of achieving a successful verdict on liability. They discounted their estimate of damages with the possibility

that the Supreme Court may decide that individual plaintiffs in RICO cases will be required to prove reliance. If that happens plaintiffs estimate recoverable damages at the high end to be $18,600,000 and at the low end to be $2,247,750.

Counsel's estimates are reasonable. Plaintiffs face significant problems in recovering under their RICO claims. To recover under RICO, plaintiffs have to convince a jury that defendants constituted an "enterprise" as defined in the statute, that the enterprise was separate and distinct from the alleged racketeering pattern, and that defendants engaged in a scheme to defraud involving a "bait and switch" under which they induced low income taxpayers to obtain loans at high interest rates by falsely representing that the loans were "rapid refunds" or that it defrauded customers by nondisclosure of the fact that Block was receiving certain fees from Beneficial. A major problem is that the documents do say "loan" in many places. Disclosure in the loan documents creates problems in proving proximate cause and intent to defraud. Defendants also say they were not required to disclose the fee paid to Block by Beneficial as it represented payment for actual services and was authorized by IRS regulations. In addition, the Supreme Court this past spring, while leaving the question open, indicated that there was a "substantial question whether a showing of reliance is required" to prove a RICO violation. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. __, 126 S.Ct. 1991 (2006). The necessity to prove individual reliance could be problematic in this case. Leaving aside the potential change in the law regarding reliance, plaintiffs have countervailing arguments, and evidence, such as that plaintiffs were misled by advertising, did not have the opportunity to examine the loan documents at an appropriate time, and could not simply cancel the transaction without cost. They would also argue that there is no question that the fee paid by Beneficial to Block was not

7

disclosed, but plaintiffs' counsel were understandably concerned about the problems of proof. One of the greatest problems is that apparently a large percentage of plaintiffs came back for a subsequent RAL after they undeniably knew they had obtained a loan and the cost of that loan, rather than an instant refund. Defendants represent that they had other evidence to present to a jury that most people understood they were obtaining a loan. Plaintiffs' counsel represent that in considering settlement they presented their claims to three mock juries. Counsel indicate that the juries had difficulty with the Seventh Circuit RICO pattern jury instructions, and difficulty understanding how an individual would not know the meaning of the word "loan" on a document, among other things. Counsel also had the benefit of numerous expert reports, as well as depositions of defense experts in determining the value of a settlement.

Defendants also challenge plaintiffs' damage estimates. The high figure of $93,000,000 is based on a comparison with interest rates charged by credit card companies and the contemporaneous bank prime rate. Defendants argue, plausibly, that even on a secured loan, none of the plaintiffs were likely to be loaned money at the prime rate. Defendants say they could also prove that many of the plaintiffs did not have credit cards and so could not have borrowed money on their cards. They also dispute the charges plaintiffs' expert says plaintiffs would have incurred in borrowing on a credit card. Defendants argue that the real comparison should be the comparative charges for RALs by other lenders, which they represent were higher. Under defendants' theory, plaintiffs suffered no damages at all. A jury might also decide that class members who came back for subsequent RALs were not damaged and reduce damages substantially. If plaintiffs prevailed but only on the kickback theory, total damages for the class before trebling are approximately $14,000,000, much less than the settlement.

8

In summary, the remaining claims in this very old action had survived various substantive motions that had substantially narrowed the class and the original claims. Plaintiffs were facing more motions, in limine, to exclude various evidence and experts before trial began. In going to trial, they would have to confront all of the problems discussed in this opinion, with a favorable outcome far from certain. For all of these reasons, I conclude that the settlement in this case is fair and reasonable.

Plaintiffs seek attorneys' fees in the amount of $6.25 million dollars or 15.7 percent of the gross settlement fund, or 16.5 percent of the fund after exclusion of the cost of notice and administration.[7] In addition, they ask for costs in the amount of $1,566,730.92 (which includes an award of $7,500 for class representative Lynn Carnegie). Both requests are granted. Since counsel took over the representation of this case following the rejection of the first settlement, they have pursued this case, conducting discovery, hiring experts, preparing for trial, filing motions where necessary, opposing many motions, and representing the class with intelligence and hard work. They have obtained an excellent result for the class. I have also examined the request for costs and conclude that it is reasonable.

Howard Prossnitz, one of the attorneys involved in the settlement previously rejected by the Seventh Circuit and this court, seeks attorneys' fees out of the settlement. Mr. Prossnitz' fee petition is untimely. He raises an argument that I will address in connection with plaintiffs' counsel's request for fees, however. He argues that the present attorneys have added only an incremental addition to a previous settlement, and that their fees should be limited accordingly. I

---

[7] If fund notice and administration costs exceed $2 million, they must come out of this amount, or be paid by defendants.

9

disagree. The first settlement was rejected, providing no money to anyone, because counsel did not do the work to substantiate the settlement. Due to questionable conduct by certain counsel in negotiating the settlement, counsel's failure to conduct discovery and otherwise to be able to provide an adequate basis for concluding that the settlement was fair and reasonable to the proposed settlement class, the class got nothing. Following the rejection of that settlement, new counsel came in for both plaintiffs and defendants. Essentially, the case began at that time.

Francine Schwartz, who also represented plaintiffs in the rejected settlement, seeks fees as well. In addition, she has filed an objection on behalf of Cheryl Reynolds and asks that Ms. Reynolds be allowed to reinstate her claim. Both motions are denied. Ms. Reynolds voluntarily dismissed whatever claims she had in 2005, without prejudice. I had ruled in 2004 that Ms. Reynolds could not pursue her claim under the federal Truth in Lending Act because the statute of limitations had run on the claim. In January, 2006 I ruled that the statute of limitations barred all RICO claims before April 8, 1994. Since Ms. Reynolds received her RAL in 1993, her claim is barred. There is therefore no possibility of reinstatement because she has no federal claim. Ms. Schwartz argues that Ms. Reynolds should nevertheless be allowed to intervene to argue that since there was once a settlement that would have encompassed the claims of persons like Ms. Reynolds whose claims were legally barred, any subsequent settlement should have included these claims. Ms. Schwartz cites no legal authority for this proposition, and it is frivolous.

In the years since Ms. Schwartz and other counsel who have appeared to object to the present settlement were excluded from continuing to represent the class in this case, they have continually appeared in court, and, especially in Ms. Schwartz' case, filed a continuous volley of papers in this action. It is apparent that Ms. Schwartz, who does not even attempt to argue that

10

her client's claims are not barred by the statute of limitations, intends principally to harass counsel who took her place. At least some of her filings appear to be in violation of Fed. R. Civ. P. 11.

Pursuant to this opinion, judgment will be entered in this case approving the settlement and dismissing this action.

> ENTER ORDER:
>
> _/s/ Elaine E. Bucklo_
> Elaine E. Bucklo
> United States District Judge

Dated: August 28, 2006